# EXHIBIT 10

THOMAS E. SWEENEY  
City Solicitor

DAVID J. FENTON  
First Assistant Solicitor

EDWARD L. MORRIS,  
CHRISTINE P. O'CONN  
MARIA SHEEHY  
PATRICIA SULLIVAN-T,  
DANIEL R. WOJCIK  
Assistant City Solicito

CITY OF LOWELL  
LAW DEPARTMENT  
CITY HALL  
375 MERRIMACK STREET  
LOWELL, MASSACHUSETTS 01852-5986  
Tel. (978) 970-4050 • Fax (978) 453-1510

CERTIFIED MAIL

May 10, 2000

Denise McWilliams, Esquire  
330 Broadway  
Cambridge, MA 02139

RE: Rodney Desrosiers

Dear Attorney McWilliams:

I am enclosing medical report dated April 14, 2000 from Jeffrey K. Griffiths, MD, Board Certified in Internal Medicine and Infectious Disease.

Dr. Griffiths does not relate Mr. Desrosiers present condition with an injury sustained in the performance of his duty without fault of his own.

Therefore, Mr. Desrosiers would not be entitled to benefits under M.G.L., Ch. 41, §111F, Leave with pay for incapacitated employees.

Very truly yours,

Judith M. Sweet  
Claims Agent & Investigator

Enc.

cc: Edward F. Davis, III, Superintendent of Police  
    Letter Only

012





00 MAY -9 AM 10:56

2 Wilder Drive
Unit #3
Plaistow, NH 03865
1-800-777-6160

April 18, 2000

Ms. Judith Sweet
City Of Lowell Law
375 Merrimack Street
Lowell, MA 01852

                                RE          :
                                INSURED  : City Of Lowell
                                                Police Department
                                DOI         : 01/01/1989
                                TPN #      : WC-34126

Dear Ms. Sweet:

## MEDICAL RECORD REVIEW

**RECORDS REVIEWED:** I have had the opportunity to review the medical records sent to me and note that these records include:

1. A report of Mr. ▓▓▓▓▓▓▓▓▓▓ groin blisters as he described them on March 14, 1988, which were diagnosed as venereal warts.

2. Visits on May 20, 1988, in which it was documented that these were anal warts.

3. Exams in June of 1989 which showed some on the penile shaft.

4. The incident of November 1989 in which he was struck by a hypodermic needle on the right index finger for which he received Hepatitis B vaccine and some emergency care.

5. I have also reviewed his records that begin in 1991 relating to his diagnosis and subsequent care for HIV.

**DISCUSSION:** I am asked whether or not the employee's present condition could be directly related to the injury he sustained on November 4, 1989. In my opinion, his condition of being HIV positive is more likely than not unrelated to this needle stick. The reasons for this are explained.

April 18, 2000
Page 2

First, at the time of his diagnosis of HIV in August of 1991, his CD4 count was 270. At that time, he had suffered significant decrease in his cellular immunity. It is very unlikely that a needle stick injury less than two years beforehand with infection due to this injury would have led to a decrease in his CD4 count of that magnitude. Based upon experience with gay men in California, the expectation is that people lose approximately 60 cells per year from their normal level of more than 500. At that rate he would have been expected to have had a CD4 count several years after infection that might still have been in the normal range which would be somewhere between 500 and perhaps well over 1000 or perhaps as low as 400. His CD4 count was approximately the CD4 count to be expected in someone who might have been infected for approximately seven years.

I note that there had also been some discussion on the part of one of his physicians that he had thrush. I note this from a note at Beth Israel Hospital dated August 17, 1993, in which Mr. _____ had an initial visit to that clinic. At that time, the past medical history relates that the patient had developed multiple strep throats in 1990-1991 and went to his local doctor who thought he might have had some thrush and recommended HIV testing. The development of thrush usually occurs also after a number of years of infection, and by 5-7 years of infection. Again, this gives us another independent indicator that his infection dated to the mid 1980's rather than 1989.

The third point that I would make is that in well-conducted studies that have been done by the CDC, the incidence of transmission of HIV by an accidental needle stick, even from a person with known HIV, is rather low. Indeed, the CDC has had difficulty quantitating that number because it is so rare that it is hard to find any cases of people who have had accidental transmission of HIV with a needle stick.

Therefore, given the independent indications that Mr _____ had had significant decrease in his immune status as evidenced by a low CD 4 count and by the development of thrush in 1990-1991, it is more likely than not that his acquisition of HIV was in the mid 1980's.

While it is possible that he could have had transmission of HIV from an accidental needle stick, the subsequent laboratory parameters are inconsistent with transmission in November of 1989, and the clinical history of thrush during the period of time 1990-1991 is also inconsistent with the transmission of the disease in November of 1989.

SUMMARY: In summary, Mr. _____ had a needle stick injury in November of 1989. Needle stick injuries can occasionally be associated with the transmission of HIV, although it is uncommon. His subsequent diagnosis of HIV in 1991 has associated with it a number of clinical and laboratory parameters which indicate that his actual HIV infection time period was a number of years beforehand and most likely in the mid 1980's.

April 18, 2000
Page 3

If I can be of any further assistance, please feel free to contact me.

Sincerely,

*[signature]*

Jeffrey K. Griffiths, M.D.
Board Certified in Internal Medicine,
Pediatrics, & Infectious Diseases

# EXHIBIT 11

# GLOBAL CARE MEDICAL GROUP, P.C.

**ELIAS NABBOUT, M.D.**
**ROSEMARY JANOS F.N.P.**
**ROBIN TOMPKINS F.N.P.**

November 12, 2003

Ms. Judith Sweet
Claims Agent
Law Department
City Hall
Lowell, MA 01852

RE: Rodney Desrocieirs
Date of Injury:
Claim #:

Dear Ms. Sweet:

In compliance with the new directive from the Law Department, this patient is not a member of our practice.

I am writing in reference to the above named City of Lowell employee who works for the Police Department. The patient's medical history dates back to 1989 when he apparently was stuck with a dirty needle on the job when he was trying to arrest a suspect. He tested positive in 1991 and has been on various medications since that time. In February, 2000 he stopped working because of increased weakness and progression of his disease. At this time he continues to have generalized weakness, malaise. He is on various medications for his HIV and those medications are known to cause muscle weakness. The combination of the weakness from the disease and the weakness from the medication will prevent him from performing his duties as a police officer. The other point that needs to be taken into consideration is that considering the nature of his work there is some risk of transmitting the virus to other people and suspects, by direct heavy contact especially if there is blood or wounds involved.

Taking all of the above into consideration I recommend that Mr. Desrocieirs not return to work as a police officer. Please do not hesitate to call me with any questions at (978) 453-8261. This interview was conducted in the presence of Mr. Desrocieirs' Attorney Denise McWilliams.

Sincerely yours,

Elias Nabbout, M.D.

EN:cml

600 Clark Road • Tewksbury, Massachusetts 01876 • Telephone (978) 453-8261 • Fax (978) 453-7911

# EXHIBIT 12

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                                          C.A. NO. 01-0843F

JOHN DOE,                        )
    Plaintiff              )
                                 )
V.                               )
                                 )
CITY OF LOWELL,                  )
JOHN F. COX, and                 )
EDWARD DAVIS,                    )
    Defendants             )

### AFFIDAVIT OF JUDITH SWEET

Now comes Judith Sweet and makes affidavit as follows:

1     make this affidavit of my own personal knowledge;

2.    I am the Claims Agent and Investigator for the City of Lowell. As Claims Agent and Investigator, I investigate and review all work-related injuries and applications for workers' compensation benefits and § 111F benefits;

3.    John Doe was injured while at work on November 4, 1989. On that date, he was stuck with a needle. Officer Doe did not file for § 111F benefits at that time, and continued to work as a police officer until February, 2000.

4.    On November 4, 1989, Officer Doe and Officer Lamarche filed a Crime/Incident Report concerning the arrest that led to Officer Doe's injury.

5.    Officer Doe did not follow all of the City of Lowell Police Department's procedures regarding exposure of infectious disease pursuant General Order 88-01 (See Plaintiff's Attachment G).

    First, Officer Doe's report did not indicate that he carried, as required, protective gloves, nor does it indicate that he used the protective gloves, as required in section III(A)(2) of General Order 88-01.

    Second, Officer Doe did not file all necessary reports. Although he filed an incident report as section III(C)(3), Attachment A requires, he did not file the

Massachusetts Department of Public Health Unprotected Exposure Report Form that section III(C)(3) also requires. In addition, this office never received notice from the hospital that that he had sustained an unprotected exposure pursuant to section III(C)(3), Attachment A.

6. In February, 2000, the Plaintiff through his attorney, requested § 111F benefits. He claimed that, in February of 2000, he was unable to perform his duties as a police officer because of his HIV disease, which he claimed he contracted almost 11 years earlier when he sustained a needle stick at work. The Plaintiff's attorney did not provide the City a medical opinion that either 1) he was incapacitated for duty; or 2) that such incapacity was the result of an injury the Plaintiff sustained while in the line of duty, in February, 2000.

7. In April, 2000, the Plaintiff provided this office a doctor's note stating that he was unable to perform the tasks of a police officer. In the fall of 2000, however, the Plaintiff advised the City in connection with another lawsuit that he was able to perform the duties of a police officer.

8. To date, the City has not received an opinion from any doctor stating that the Plaintiff contracted HIV from his November 4, 1989 injury, nor has the City received any opinion expressing a likelihood or even a possibility that the Plaintiff contracted HIV from his November 4, 1989 injury.

9. I did not receive any correspondence or notifications from Officer Doe concerning between the November 4, 1989 injury and his attorney's correspondence in February, 2000.

Signed under the pains and penalties of perjury this 26th day of August, 2002.

Judith M. Sweet