# EXHIBIT 18

1

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2

 3     - - - - - - - - - - - - - - - - -
                                         -
 4     RODNEY D. DESROSIERS,             -
                    Plaintiff            -
 5                                       -
       vs.                               -   No. 04-11932-NG
 6                                       -
       CITY OF LOWELL, MASSACHUSETTS     -
 7     POLICE DEPARTMENT,                -
                    Defendant            -
 8                                       -
       - - - - - - - - - - - - - - - - -
 9

10

11

12         DEPOSITION of RODNEY D. DESROSIERS, called

13     on behalf of the Defendant, taken pursuant to

14     the Federal Rules of Civil Procedure before

15     Carla J. Grand, Professional Court Reporter and

16     Notary Public within and for the Commonwealth of

17     Massachusetts, at Lowell City Hall, Mayor's

18     Reception Room, 375 Merrimack Street, Lowell,

19     Massachusetts, on Wednesday, May 10, 2006,

20     commencing at 11:00 a.m.

21

22

23                      A-PLUS COURT REPORTING SERVICES
                              1959 Lakeview Avenue · Dracut MA 01826-3209
24                             Office: (978) 455-1522 · Fax: (978) 455-1523
```

| | | |
|---|---|---|
| 1 | | agreement? |
| 2 | A. | No, I still intend to pay him back because that |
| 3 | | was money he took off credit cards and stuff, so |
| 4 | | he needs to pay those off. |
| 5 | Q. | Now, you said you depleted your 457 plan, so you |
| 6 | | were able to take the money out? |
| 7 | A. | Yes. |
| 8 | Q. | When were you able to do that? |
| 9 | A. | It was a series of withdrawals from probably |
| 10 | | 2001 to 2003 or so. |
| 11 | Q. | Did you receive any documentation from the City |
| 12 | | in connection with that? |
| 13 | A. | Not from the City, no. |
| 14 | Q. | And who managed the 457 when you were making the |
| 15 | | withdrawals? |
| 16 | A. | Originally it was Copeland Company, and then |
| 17 | | they changed to ING.  And then I believe it |
| 18 | | changed one last time to maybe Aetna.  I'm not |
| 19 | | 100 percent sure.  But they changed hands a few |
| 20 | | times. |
| 21 | Q. | Do you know the total amount of your withdrawal? |
| 22 | A. | I know in 2000 I had approximately 45, 47,000 in |
| 23 | | there, so. |
| 24 | Q. | Do you know how much the penalty was? |

1   A.   No.
2   Q.   Have you met with a job counselor?
3   A.   No.
4   Q.   Have you ever met with a headhunter?
5   A.   No.
6   Q.   I shouldn't say ever. Have you met with a
7        headhunter since February of 2000?
8   A.   No.
9   Q.   Now, you have told me that in the past, and I
10       just haven't found the communication, there was
11       an organization that paid your health insurance
12       premium for a while, correct?
13  A.   That's correct.
14  Q.   What is the name of that organization?
15  A.   Community Research Initiative.
16  Q.   Where are they located?
17  A.   Boston.
18  Q.   Do you know the address?
19  A.   I don't recall the street they are on.
20  Q.   Do you know how long or during what period they
21       paid for your health insurance premium?
22  A.   Probably beginning the mid 2001 up to 2005.
23  Q.   And did they pay for the entire amount that you
24       owed?

```
1    A.    Yes.
2    Q.    Have you reimbursed them?
3    A.    Not at this time, no.
4    Q.    Have they requested reimbursement?
5    A.    No.
6    Q.    Do you have any knowledge or reason to believe
7          that they will in the future request
8          reimbursement?
9    A.    I don't know.  It is my intention to do so
10         though.
11   Q.    But you are not aware of any requirement?
12   A.    Not aware of any.
13   Q.    Do you have a contact person there?
14   A.    No.  I'm not sure.
15   Q.    Do you know the names of any employees that you
16         have dealt with there?
17   A.    I did all of -- the financial person at Beth
18         Israel Hospital, Lauren, helped, assisted me
19         with the paper work with them.  So I basically
20         went through her.
21   Q.    Since you stopped going to work in February of
22         2000 have you applied for any other type of
23         insurance besides the Blue Cross that you have
24         with the City?
```

1  A.  No.
2  Q.  So you haven't applied for Mass Health,
3      Medicare, anything like that?
4  A.  No.
5  Q.  No supplemental insurance plans?
6  A.  No.
7           MS. McMAHON:  Can we mark this as the
8      first exhibit.
9           (Amended Complaint marked for
10          identification as Exhibit No. 1.)
11 Q.  I'm going show you a copy of your Amended
12     Complaint which has been marked as Exhibit 1.
13     If you wouldn't mind taking a look at that and
14     tell me if you recognize that document?
15 A.  (Witness looks at document.)  Yes.
16 Q.  In Paragraph No. 3 of the Complaint you state
17     that the Federal Court has jurisdiction over
18     this matter pursuant to the Americans with
19     Disabilities Act, correct?
20 A.  Yes.
21 Q.  So my question to you is, are all of your claims
22     in the Complaint for discrimination under the
23     ADA?
24 A.  Yes.

1  Q.  So it's not your intention to pursue claims
2      under any other statute besides the ADA even
3      though you reference other statutes in the
4      Complaint?
5  A.  That's correct.
6  Q.  Now, can you specify for me, what are your
7      claims in this lawsuit against the City relative
8      to Mass General Laws Chapter, 41 Section 111F?
9  A.  In regards to that it is the fact that the City
10     of Lowell did not provide me those benefits.
11     And I feel that it was the reason was
12     discriminatory or disability discrimination.
13 Q.  And does the same reasoning apply to the claims
14     relative to the alleged disclosure of your
15     medical condition?
16 A.  Yes.  I believe that it was one aspect of the
17     disclosure was discriminatory.
18 Q.  And the purpose of my asking is I'm trying to
19     distinguish this case from the other case that
20     you have, and obviously you're referencing other
21     lawsuits in this case.  So I'm just trying to
22     narrow the issues.  So I'll ask you also, what
23     is your claim regarding leaves of absence in
24     this Complaint?

| | | |
|---|---|---|
| 1 | Q. | So you're claiming that the actions of Dennis |
| 2 | | Cormier which you allege were a violation of |
| 3 | | your privacy were discriminatory under the ADA? |
| 4 | A. | The Amended Complaint is saying that they were |
| 5 | | discriminatory. |
| 6 | Q. | And besides that what are your other claims |
| 7 | | regarding Dennis Cormier? |
| 8 | A. | The other claim was, references the refusal by |
| 9 | | the City of Lowell to issue me a wage |
| 10 | | certification letter which is routinely granted |
| 11 | | to other employees. |
| 12 | Q. | So are you contending that Dennis Cormier did |
| 13 | | that? |
| 14 | A. | The Complaint is contending that a high |
| 15 | | authority in the Police Department. Dennis |
| 16 | | Cormier was the, oversaw the finance department |
| 17 | | where these letters originated from. So like I |
| 18 | | say, we still have discovery in the matter, but |
| 19 | | he was the supervisor of the finance department |
| 20 | | who would be I imagine the high authority. |
| 21 | Q. | I think discovery was over with the exception of |
| 22 | | this deposition? |
| 23 | A. | Well, I still am awaiting some paperwork. |
| 24 | | MS. POSTER: I just want to state for |

1   the record that I had a telephone conversation
2   with Attorney McMahon yesterday, which would
3   have been the 9th.
4           MS. McMAHON: The City still owes him
5   payroll records, right.
6           MS. POSTER: Where it was agreed that
7   portions of discovery which the City was
8   compelled to provide pursuant to order of the
9   Federal Court would be provided forthwith.
10          MS. McMAHON: By May 17 is what we
11  agreed on on the phone, correct?
12          MS. POSTER: That's not my
13  recollection, but if you would provide them by
14  May 17 that would be satisfactory.
15          MS. McMAHON: Okay. I thought we had
16  agreed by May 17.
17          MS. POSTER: I don't have my records
18  in front of me, but that would be satisfactory
19  if you could have those records to us by May 17.
20          MS. McMAHON: I'm not disputing the
21  Judge's order on that.
22  Q.  The point of my question is since discovery is
23      just about over with, very few exceptions, who
24      is that high authority to your knowledge?

| | | |
|---|---|---|
| 1 | A. | The other thing I would just add to that besides |
| 2 | | the paperwork and some Answers to |
| 3 | | Interrogatories is, I did ask in my motion to |
| 4 | | compel that once I received that information |
| 5 | | that I be allowed if I so desired to take |
| 6 | | depositions in this matter. |
| 7 | Q. | Right, but -- |
| 8 | A. | That would be considered further discovery. |
| 9 | Q. | Right, but do you have any reason to believe |
| 10 | | that any of this discovery that is still |
| 11 | | outstanding would lead you to find out who that |
| 12 | | high authority is? |
| 13 | A. | The depositions may lead to that. |
| 14 | Q. | So today you don't know who that high authority |
| 15 | | is, correct? |
| 16 | A. | The high authority, no, I wasn't given the name |
| 17 | | of the high authority. |
| 18 | Q. | So you are not alleging, and I'm not trying to |
| 19 | | put words in your mouth, I'm just trying to find |
| 20 | | out for my client. You are not alleging today |
| 21 | | that that high authority is Dennis Cormier, is |
| 22 | | that correct? |
| 23 | A. | Well, I know that he was in charge of the |
| 24 | | finance department. I know that he would be a |

Q. What portion did you have to pay? Is it some percentage?

A. It is a certain percentage. I'm not sure if it's 25 or -- I think it's maybe 25, 30 percent. Whatever the pension system charges you for health insurance.

Q. Did you get the reimbursement check from the Retirement Board or from the City?

A. I'm not sure who it came from.

Q. Do you know how much it was approximately?

A. I would say approximately $5,000.

Q. I believe you already testified you didn't return any of that money to Community Research Initiative?

A. Not at this time.

Q. Directing your attention to Paragraph No. 31 and 32.

A. (Witness looks at document.)

Q. Can you tell me if those are new claims or if it is background information in those paragraphs?

A. That is part of the claim, the fact that the City of Lowell despite a court order did not pay my wages is part of the discrimination claim.

Q. Do you know that the City has appealed the

