# EXHIBIT 19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RODNEY D. DESROSIERS,<br>Plaintiff | )<br>)<br>) | C.A. NO. 04-11932-NG (SEALED) |
| V. | )<br>) | |
| CITY OF LOWELL, MA.<br>POLICE DEPARTMENT<br>Defendant | )<br>)<br>)<br>) | |

**AFFIDAVIT OF KATHRYN A. TIERNEY**

Now comes Kathryn A. Tierney and makes affidavit as follows:

1. I make this affidavit of my own personal knowledge;

2. I am the Human Relations Manager for the City of Lowell. I have worked for the City of Lowell in that capacity since December 1991. Prior to my appointment as Human Relations Manager, I worked for the City of Lowell in various administrative capacities since May of 1985, including Administrative Assistant, and Personnel Director.

3. In my capacity as Human Relations Manager, I am responsible for Benefit Administration, Contract Administration, Labor Relations, and other employment matters.

4. In my capacity as Human Relations Manager, I know Rodney Desrosiers, a retired Lowell Police officer. I do not know him on a personal basis.

5. On or about May 11, 2001, through an audit, the City of Lowell Human Relations Office discovered that Desrosiers and 2 other employees of the Police Department were off the payroll, without compensation. The City of Lowell's health insurance plan had been insuring the 3 employees, even though the employees were not paying their portion of health plan premium.

6. On May 11, 2001, the Human Relations Office sent, via certified mail, COBRA notices to all three employees regarding their right to continue in the group health plan if they so desired. The City treats these non-FMLA absences as qualifying events since their hours have been reduced to zero; this is standard practice.

7. On or about May 22, 2001, the Human Relations Office sent the three employees notices regarding potential rights under FMLA if their absence qualified for leave, and an invoice for 25% of premium due back to the date the employees went off the payroll.

8. None of the three officers, including Desrosiers, followed through with the FMLA request or documentation.

9. The City provided Desrosiers notice of his rights under the federal COBRA law when his Family Medical Leave Act protection would have expired on June 10, 2001.

10. On or about June 15, 2001, a second notice of their premium due was mailed with a note that coverage would cancel if the City did not receive payment by June 22, 2001.

11. Desrosiers thereafter paid the amount due.

12. Desrosiers continued to remain absent from work and off the payroll.

13. Like all similarly situated employees who are off the payroll (employees who have not been terminated but have not worked and therefore have not received a paycheck), the City offered the Complainant the option to elect health insurance benefits pursuant to COBRA.

14. Desrosiers elected to participate in the health insurance plan and began paying under COBRA on June 10, 2001.

15. At the time that the Human Relations Office placed Desrosiers on COBRA, he had not worked since February of 2000. He had exhausted his sick and vacation time.

16. As I understood the COBRA statute at the time, COBRA provides that employees who would lose health insurance coverage under their employer's plan as the result of a "qualifying event," may elect to continuation coverage under the employer's plan.[1] The City considered Desrosiers' reduction of working hours to zero hours a qualifying event, as COBRA provides.[2]

17. Since COBRA's enactment, the City of Lowell has always offered COBRA benefits to all employees who are off the payroll and not under the Family and Medical Leave. The City of Lowell has never required any person to elect COBRA benefits.

18. Desrosiers voluntarily elected to continue coverage under COBRA. From the period of June 10, 2001, through December 10, 2002, Desrosiers continued as a participant in the City of Lowell's group health and dental coverage under COBRA.

19. The City allowed Desrosiers continuation coverage for 18 months commencing June 10, 2001, which is the maximum period required under COBRA for this qualifying event. During the time when the City considered Desrosiers covered by COBRA, the City charged Desrosiers for 102% of his health insurance premium in accordance with 29 USC § 1162(3)(A).

20. All other employees who have elected the option for continued coverage during my employment in the Human Relations Office had been required to pay 102% of their health insurance.

21. On or about November 5, 2002, the Human Relations Office mailed a notice to Mr. Desrosiers indicating that his eighteen months of COBRA was ending and that his group health and dental coverage through the City would end on January 10, 2003. The City

---

[1] See 29 USC § 1161.
[2] See 29 USC § 1163.

sends all employees termination forms if the employee participates in the health insurance plan through COBRA for 18 months.

22. In December, 2002, Desrosiers requested that the City continue to allow him to participate in the health insurance plan pursuant to M.G.L. c.32B, and that the City change his past coverage to coverage pursuant to M.G.L. c.32B instead of COBRA. Desrosiers is the first employee and only employee to date, who has requested health insurance coverage pursuant to M.G.L. c.32B.

23. I thereafter became informed that Desrosiers had 2 open lawsuits against the City. First, he sued the City for benefits under M.G.L. c. 41, § 111F, alleging that he sustained an injury while in the performance of his duties that rendered him incapacitated. My understanding was that the City contested that lawsuit at that time because (1) the City did not have any current documentation showing that Desrosiers could not perform the duties of his job; and (2) the City contended that even if he could prove incapacity, he did not sustain his injury while in the performance of his duties.

Second, I also became informed that Desrosiers also was suing the City for discrimination at the MCAD. In his discrimination lawsuit, he alleged that he is unable to perform his job duties due to a hostile work environment based upon his medical condition. He did not claim that he was incapable of performing the duties of his job, but rather that he was a qualified handicapped person capable of performing the functions of a police officer. He claimed that he could not return to work due to a hostile work environment, not due to sickness.

24. On January 16, 2003, the City of Lowell allowed Desrosiers' request to continue group health coverage under M.G.L. c.32B. Desrosiers is the first person to my knowledge for

whom the City provided insurance pursuant to M.G.L. c. 32B, § 7(A)(b). Pursuant to M.G.L. c.32B, §7A, Desrosiers was required to contribute 100% of the cost of the plan. The evidence the City possessed at that time showed that Desrosiers was not working because he was alleging a hostile work environment.

25. On or about January 16, 2003, the Human Relations Office changed Desrosiers' 18 months of coverage under COBRA – which Desrosiers himself had previously requested – to coverage under M.G.L. c.32B. The City credited Mr. Desrosiers' account the additional 2% he had been paying under COBRA, since M.G.L. c.32B, §7A only requires employees to pay 100%, as opposed to the 102% allowed under COBRA.

26. The City did not require Desrosiers to pay a higher price for his health insurance than other employees who stopped working. In fact, he paid less for his insurance for all other employees who have received continued coverage after they stopped working and exhausted sick and vacation leave, because all other such employees have been required to pay 102% of their health insurance.

27. While under COBRA, the City received payment for Desrosiers' health insurance premium from CRI of New England.

28. In September 2005, the Human Relations Office received notification from the Lowell Retirement Board that Desrosiers had retired, and that his retroactive retirement date was November 21, 2003. Retirees are eligible for health insurance through the City. Retirees must pay 25% of the health insurance premium. The City therefore credited Desrosiers for the amount paid on his behalf for medical and dental insurance in the amount of $8,486.93, representing 75% of the amount paid on his behalf for health insurance between November 2003 through September 10, 2005.

29. The Human Relations Office's records do not contain any grievance filed by Desrosiers under his collective bargaining agreement regarding his health insurance, or any grievance relative to his health insurance.

30. I did not perform any act to discriminate against Rodney Desrosiers.

31. As part of my duties, I accept all applications for medical leave for all City of Lowell employees. Desrosiers never applied for a medical leave of absence. From February 10, 2001, to September 2005, Desrosiers' status was "absent without pay."

Signed under the pains and penalties of perjury this 15th day of June, 2006.

/s Kathryn A. Tierney
Kathryn A. Tierney
City of Lowell Human Relations Manager