UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Rodney D. Desrosiers          C.A. NO. 04-11932-NG
   Plaintiff

V.

City of Lowell, MA.
   Defendant

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Now comes the Plaintiff, Rodney Desrosiers (hereinafter "Plaintiff") in the above-captioned matter and respectfully request this honorable court to deny the Motion for Summary Judgment filed by the Defendant, City of Lowell MA. (hereinafter "City of Lowell"), since there exist genuine issues of material fact in dispute and the City of Lowell is not entitled to judgment as a matter of law. Pursuant to Fed.R.Civ.P. 56 the Plaintiff hereby list the material facts of record that he contends are in dispute.

### II. RESPONSE TO CITY OF LOWELL'S STATEMENT OF UNDISPUTED FACTS

1.      The Plaintiff was retired by the Public Employees Retirement Administration Commission (PERAC) with an accidental disability pension on September 15, 2005. The plaintiff disputes that his claims are limited to violations of the Americans with Disability Act (hereinafter ADA). The plaintiff contends that his claims also come under violations of Massachusetts General

1

Law Chapter 151B, section 4. **See** Ex. 1, 2. The plaintiff has yet to receive a copy of his deposition that was taken in May 2006 for this matter. If given the opportunity to review his deposition for errors, the Plaintiff would have clarified his answer to include that in addition to the ADA, the plaintiff was making claims of violations of M.G.L. Chapter 151B, section 4. The plaintiff erred by interpreting the Defendant's question as asking him what other federal laws he was pursing besides the ADA. As evidence that the Plaintiff seeks redress also under M.G.L. Ch 151B, section 4, the Plaintiff, in addition to his MCAD complaints which state the same, states that in his answers to the "Defendant's First Set of Interrogatories" the Plaintiff provided a response to the Defendant's question as to why he believed the Defendant had violated state law. **See** Ex. 3. ¶ 12. The Defendant therefore is well aware that the Plaintiff is seeking claims under state law as well as the ADA.

    The Plaintiff's Amended complaint alleges that the plaintiff was treated differently than other employees who (1) have requested benefits pursuant to M.G.L. c. 41, section 111F; (2) have requested documentation to withdraw money from a 457K fund; (3) have revealed confidential medical information to the City of Lowell (4) were allowed medical leave of absence status, which the Defendant is apparently now denying it approved for the Plaintiff, and therefore their reason for denying the Plaintiff the benefit of lower health insurance premiums under M.G.L., Ch 32B, section 7A. **See** Ex. 4.

2.    The Plaintiff disputes that he admitted in his amended complaint that is unable to perform his job duties with "reasonable accommodations" (emphasis

added on "reasonable accommodations"). The plaintiff's amended complaint states that the plaintiff requested a medical leave of absence from the Defendant in February 2000. See Ex. 4 ¶¶ 6, and Ex. 15. The Superintended of Police Edward Davis (hereinafter Chief Davis) approved the Plaintiff's request for an indefinite medical leave of absence. See Ex. 15, 16, 17,18,19. The medical examination conducted by Dr. Elias Nabbout in November 2003 was conducted pursuant to the rules of civil procedure for the plaintiff's civil case under M.G.L. chapter 41, section 111F (hereinafter 111F). See Ex. 5. Benefits under 111F do not take into consideration "reasonable accommodations", nor must an applicant request "reasonable accommodations" when applying for benefits under 111F. See Ex 6. The plaintiff was retired under M.G.L. chapter 32, section 7, which is a statue that also does not take into account "reasonable accommodations". See Ex. 7. Reasonable accommodations, for the plaintiff in this matter, could include either a medical leave of absence, or light duty assignment, or both. The defendant has on numerous occasions offered other employees long-term medical leaves of absences (up to eight years in one instance), as well as offered many other police officers "light duty" assignments for indefinite periods of time. See Ex. 8,9. The City of Lowell has never argued that either one of these accommodations for the Plaintiff would be an undue hardship. No physician has ever examined the plaintiff using the possibility of "reasonable accommodations" as a standard.

3.  The plaintiff amended complaint states that it was the Massachusetts Superior Court who determined that the plaintiff was entitled to benefits under

3

111F, and that the defendant's refusal to obey such order, and make false claims in defense of their case regarding the plaintiff's incapacitation, constitutes discrimination and retaliation against the plaintiff, since the Defendant has never before demonstrated such intensity to avoid paying 111F benefits to an officer. **See** Ex. 4 ¶ 31, Ex. 10, Ex. 25, Ex. 32.

In fact, Judith Sweet, the previous workers compensation agent for the City of Lowell testified that the number of 111F claims actually denied by the City of Lowell is "very low". **See** Ex. 10. The plaintiff argument is that the City of Lowell's decision to appeal, and therefore further delay the plaintiff his 111F benefits, is motivated by disability discrimination, and retaliation against the Plaintiff for the filing of a discrimination claim with the Massachusetts Commission against Discrimination (hereinafter MCAD). This is especially evident because one of their arguments presented in the 111F matter is that they deny that they accepted the Plaintiff as incapacitated from 2000-2003. **See** Ex. 32. It is known that this argument is false since the Defendant at MCAD argued that they had "proof" the Defendant was incapacitated during this same period. **See** Ex. 23. The reference to Cormier highlights just one of many examples how the Defendant choose to "raised the bar" when it came time to providing the plaintiff his benefits under 111F. The plaintiff believes that this "raising of the bar" was motivated by the nature of the plaintiff's disability, as well as in retaliation towards the Plaintiff for the filing of a complaint with MCAD.

4. The plaintiff's amended complaint details how the plaintiff was treated differently in regards to his terms of employment then other Lowell Police

4

Officers. The Defendant admits that their employment policy is not to disclose employee's private medical information to third parties without written permission. **See** Ex 26. However, in regards to the Plaintiff, the City of Lowell failed to maintain his medical information in a confidential manner, compared to other officers with medical conditions who they do maintain confidentiality for. **See** Ex. 30 ¶ 9. Furthermore, police department policy requires the Chief of Police to conduct an investigation when presented with a charge of a violation of regulations, and an officer who communicates confidential information to third parties has committed a punishable offense. In the plaintiff's matter, the Chief of Police failed to conduct any investigation when presented with a charge of wrongdoing by the plaintiff's attorney, and failed to discipline anyone involved in wrong doing. The City Solicitor (Thomas Sweeney) also failed to take any disciplinary actions against his subordinate, Judith Sweet, after Chief Davis informed him that Judith Sweet was improperly disclosing the plaintiff's medical condition to officers who did not have a need to know. **See** Ex. 35.

The plaintiff believes that the violation of his medical privacy constituted not only a breech of his right to privacy, but that it was an adverse and disparate term of employment which motivated by "discriminatory animus" due to the nature of the plaintiff's disability. It should be noted that the City of Lowell is not a defendant in the state court privacy case, which the state court has denied to dismiss after a summary judgment motion filed by Chief Davis. **See** Ex.11.

5. The Plaintiff possesses a tape-recorded message from Copeland Companies representative Neil Butkha recorded on the home answering

machine of the Plaintiff. This message from Neil Butkha informs the plaintiff that his employer will not cooperate with providing a wage certification letter because the plaintiff was "not injured enough". **See** transcript marked Ex. 12. The plaintiff spoke the next day via phone with Neil Butkha and was informed that a high authority refused to cooperate in providing a letter stating that the plaintiff was "not injured enough" and "should not be out of work". These statements despite medical documentation certifying a medical leave was needed and despite Chief Davis's approval of a medical leave of the absence. Finance Officer Daniel Demarais testified that wage certification letters, such as that requested by the Plaintiff, are routinely granted, and he could not remember any employee having been denied such a letter in his two years working in the Finance Department. Although the plaintiff was later able to access a withdrawal, it was only after the plaintiff had to take the additional steps of getting confirmation for Copeland Companies from his physician that he was indeed qualified for medical leave. Deputy Cormier, who was the highest authority heading the finance office at the time, has never denied that he was involved in denying the plaintiff this letter. Cormier when asked if he was the person who spoke to Copeland Companies stated "I don't remember" and then went on to say "that doesn't mean it didn't happen, I just don't remember". **See** Ex. 13.

6.     The plaintiff disputes that he was treated the same as similarly situated employees as it relates to his employment status, and therefore his eligibility for benefits under M.G.L. Ch 32B, section 7A , which is a state law that entitles municipal employees on "unpaid medical leave of absence" to pay only 50% of

6

their health insurance premium, with the municipality paying the other 50%. **See** Ex. 14. The evidence in this matter demonstrates that Chief Davis was asked for, and approved, an indefinite medical leave of absence for the plaintiff. **See** Ex. 15, 16, 17. The City of Lowell itself has acknowledged in prior legal filings that the plaintiff was on an indefinite medical leave of absence. **See** Ex. 18, line 8, Ex. 19, ¶ 3 and 5, Ex. 30 ¶ 8. It is not the City of Lowell's initial error in improperly classifying the plaintiff's employment status that is the main discriminatory issue here, but rather it is the subsequent refusal of the City of Lowell to correct it's error when notified by both the plaintiff and his Attorney that is most important to note in this event. If the plaintiff's employment status were to be acknowledged as Chief Davis approved, then the plaintiff would be eligible for reduced health insurance premiums under state law. There is no evidence whatsoever that other employees were in the same situation as the plaintiff and treated the same by the City of Lowell. To the contrary, the City of Lowell has approved medical leave of absences for officers for indefinite periods of time (up to 8 years in one instance). **See** Ex. 8, 9. The plaintiff denies that he was treated the same as similarly situated employees since the evidence shows that the City of Lowell routinely allows officers long term medical leaves of absences.

7.  The Plaintiff's accumulated sick time expired in February 2001 and the plaintiff thereafter received no weekly income from the City of Lowell. When the plaintiff was notified in May 2001 that he owed back health insurance premiums for an approximate two-month period the plaintiff immediately had such payments made to the City of Lowell to avoid cancellation of his policy.

7

8. The Plaintiff denies that a qualifying event took place that would initiate COBRA since M.G.L. chapter 32B, section 7A, existed, which was a benefit to municipal employees out on unpaid medical leave of absences. See Ex. 14.

9. The plaintiff denies that he did not follow through with applying for leave under the Family Medical Leave Act (FMLA). To the contrary, the plaintiff submitted a request for such leave and attached a copy of his physician's statement confirming he was entitled to such leave. See Ex. 28.

10. The plaintiff elected to take COBRA coverage in 2001 because he was not aware of his rights under M.G.L. chapter 32B, section 7A.

11. The plaintiff was able to obtain funds to pay the City of Lowell his health insurance premiums to prevent cancellation.

12. The plaintiff accepted COBRA coverage since he was unaware of his rights at the time under M.G.L. chapter 32B, section 7A. The plaintiff supplied his employer a physician's note confirming the need for a medical leave of absence, which the defendant did not contest. See Ex. 20.

13. The plaintiff's attorney (Denise McWilliams) requested a medical leave of absence for the plaintiff on February 21, 2000, which was granted by Chief Davis. See Ex. 15, Ex. 16, line 9-10, Ex. 17, line 18-21, Ex. 18, line 8, Ex. 19, ¶ 4,6, Ex. 20, Ex. 30, line 8, and Ex. 31 lines 3-18. The Plaintiff remained on the payroll until his sick time ran out in February 2001.

14. The plaintiff denies that a qualifying event occurred to initiate COBRA, since M.G.L. chapter 32B, section 7A existed. Even if the City of Lowell was unaware of this state law as they claim, they had the duty after they were notified

8

of the law, to provide the plaintiff the benefits of this law, since they were aware that the plaintiff was absent from work due to medical reasons. <u>See</u> Ex. 16, line 9-10, Ex. 17, line 18-21, Ex. 18, line 8, Ex. 19, ¶ 4,6, Ex. 20, Ex. 30, line 8.

15.   The plaintiff provided the defendant a letter in April 2000 from his physician, which confirmed that the plaintiff was medically unable to perform the duties of a police officer. <u>See</u> Ex. 20. The defendant had the option under City of Lowell policy to have the plaintiff examined by the city physician (Dr Nabboutt) if they had any doubt about the incapacitation of the plaintiff in 2000 or thereafter, and they choose not to until the first 111F scheduled trial date was upon them. <u>See</u> Ex. 21. Dr Griffith's, the medical expert hired by the City of Lowell to examine the plaintiff's 111F claim, also had the right in May 2000 to examine the plaintiff if there was any doubt to the plaintiff's incapacitation for 111F purposes, and he also decided there was no need to examine the plaintiff. <u>See</u> Ex. 29, lines 11-19.

The plaintiff also disputes the defendant's misstatements as they relates to his claims at MCAD.  First off, the plaintiff filed an amended complaint at MCAD that the defendant does not mention. Nevertheless, both the plaintiff's original MCAD complaint and the plaintiff's amended MCAD complaint both confirm that the plaintiff was absent from work due to medical complications. <u>See</u> Ex. 1, 2. The plaintiff's amended complaint also clearly states that the plaintiff is a qualified employee with "<u>reasonable accommodations</u>". <u>See</u> Ex. 1, 2. Again, reasonable accommodations for the purposes of MCAD complaints can include medical leaves of absences and/or light duty assignment (both of which

9

are not applicable when one is considered for benefits under 111F or M.G.L. chapter 32, section 7 (disability retirement). Finally, the City of Lowell admitted at MCAD in September 2000, January 2001 and December 2001 that the Plaintiff was on sick leave from the Department. See Ex. 23, ¶ 2, Ex. 24, ¶ 2 and Ex. 30 Line 8.

16. The plaintiff believes the defendant's statements regarding COBRA coverage are irrelevant, since the plaintiff's claim is that he should have never been placed on COBRA coverage to begin with, and that when he requested a correction, and benefits under M.G.L. chapter 32B section 7A, the City of Lowell had a duty to correct their employment records to reflect that the plaintiff was on "unpaid medical leave" and therefore entitled to the benefit of paying only 50% towards his health insurance premium. The refusal on the part of the City of Lowell to correct their records was an adverse employment action.

17. The plaintiff directs this court to response #16 above.

18. The plaintiff directs this court to response #16 above.

19. The plaintiff directs this court to response #16 above.

20. The plaintiff directs this court to response #16 above.

21. The plaintiff, who became aware of his health insurance rights under state law in December 2002, asked his attorney to call the Human Relations Office of the City of Lowell so that benefits under M.G.L. chapter 32b, section 7A, could be obtained. Attorney Poster called Kathy Tierney of the Human Relations Office and informed her that the plaintiff should only be charged 50% of his health insurance premium because the plaintiff is a municipal employee out on an

unpaid medical leave of absence, and therefore M.G.L. chapter 32b, section 7A, subsection (b) would apply to the plaintiff. In response to Attorney Posters telephone call Kathy Tierney sent a letter to Attorney Poster agreeing only to lower the plaintiff's health insurance premium from 102% to 100%, therefore denying the plaintiff the right to pay 50% as allowed by state law. **See** Ex. 22.

**22.** The plaintiff disputes the defendant's allegation that the evidence showed he was out of work because of a hostile work environment. The evidence possessed by the City of Lowell clearly demonstrated that the plaintiff was in need of an indefinite medical leave of absence in February 2000 because of complications of the HIV virus, and that Chief Davis approved an indefinite leave of absence for the plaintiff, which was the first medical leave every requested by the plaintiff in his 13 years of service. **See** Ex. 15, Ex. 23, ¶ 2, Ex. 24, ¶ 2, Ex. 30 Line 8, and Ex. 31 lines 3-18.

The plaintiff supplied the defendant a letter from his physician in April 2000 certifying that he was unable to perform his duties and in need of a medical leave. **See** Ex. 20. The City of Lowell never contested this letter and in fact never contested the plaintiff's use of his accumulated sick time from February 2000 to February 2001. The plaintiff's MCAD complaints also support the plaintiff's claim that he was out of work due to physical complications of the HIV virus. **See** Ex. 1,2. In fact, the City of Lowell made the argument at MCAD that the plaintiff was not a qualified employee, even with "reasonable accommodations". **See** Ex. 23, ¶ 2, Ex. 24, ¶ 2 and Ex. 30 Line 8.

11

The evidence clearly demonstrates that the sequence of events was 1) on February 21, 2000 the Plaintiff requested a medical leave of absence 2) a breech of the Plaintiff's medical information occurred in the days after February 21, 2000, and 3) The hostile work environment occurred after the Plaintiff was approved for medical leave.

23.     The plaintiff directs this court to response #16 above.

24.     The plaintiff disputes that he paid less for his health insurance than all other employees. The Plaintiff cannot be compared to other employees who may not have been eligible for coverage under Ch 32B, section 7A or others employee's who did not apply for these benefits. The City of Lowell stated that the plaintiff is the first person to request benefits under Ch 32B, section 7A, so therefore he cannot be compared to other employees who did not request these benefits. Furthermore as detailed above, the plaintiff was not granted the benefit of 50% premium payments that the law allowed because the City of Lowell refused to recognize him as an employee on "unpaid medical leave" status despite the plaintiff's objection and despite the medical evidence they possessed. The City of Lowell has routinely offered other employee's long-term medical leaves of absences. <u>See</u> Ex. 8, 9.

25.     The plaintiff, upon being unable to afford his health insurance premiums, both because of the 100% of premium he was being forced to pay, and because he was being denied his wages under 111F, sought assistance from CRI of New England with his health insurance payments. The plaintiff was official retired by PERAC on September 15, 2005 and because the City of Lowell refused to

provide the plaintiff his 111F wages the Lowell Retirement Board (a separate entity from the City of Lowell) was allowed by stature to go back 6 months prior to the time the plaintiff submitted his accidental disability application and provide retroactive retirement wages to the plaintiff to cover a portion of the time the plaintiff was not paid his wages. The plaintiff has in good faith been repaying all of the enormous debt that he has incurred due to the defendant's discriminatory actions that left the plaintiff without substantial income for 4 ½ years.

June 27, 2006

Respectfully submitted;

*(signature)* (Pro se)

Rodney D. Desrosiers (plaintiff)
1403 Rock Wood Drive
Saugus, MA 01906
978-884-9832

## CERTIFICATE OF SERVICE

I hearby certify that a true copy of the foregoing document was served upon Attorney Kimberly McMahon, City of Lowell, Law Department, 375 Merrimack Street, Lowell, MA 01852 via first class mail on June 27, 2006.

*(signature)*
Rodney D. Desrosiers (Pro Se)

13