# EXHIBIT 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Rodney D. Desrosiers,
        Plaintiff

vs.

City of Lowell, MA.
Police Department
        Defendant

Civil Action

NO. 04-11932-NG (SEALED)

## AMENDED COMPLAINT

### Parties

1. Plaintiff, Rodney D. Desrosiers is a duly appointed police officer in the City of Lowell, and resides at 34 Shurtleff St. #2 in Chelsea, Massachusetts. The plaintiff is a citizen of the United States.

2. The Defendant, City of Lowell MA., Police Department, is located at 375 Merrimack St. Lowell, Massachusetts. The City of Lowell is a municipality organized under the laws of the Commonwealth of Massachusetts.

3. Both the Plaintiff and the Defendant are located in the jurisdiction of the United States District Court, District of Massachusetts. This court has jurisdiction over this matter pursuant to the Americans with Disabilities Act.

4. From the time of the plaintiff's appointment as a police officer in 1987, until the time his employer became aware of his disability in February 2000, the plaintiff had been well regarded and received numerous commendations, citations and awards during the course of his employment.

5. At the time of the events described in this complaint, the plaintiff was a Detective with the Lowell Police Department assigned to the West Sector precinct of the City of Lowell.

6. On February 21, 2000 the plaintiff's attorney informed Lowell Chief of Police Edward Davis (hereafter Chief Davis) that the plaintiff was HIV Positive and in need of a medical leave of absence. The Plaintiff's Attorney also sought benefits for the Plaintiff under M.G.L. Chapter 41, Section 111F, which is the statue that provides benefits for police

officers in Massachusetts injured in the line of duty. Chief Davis was provided documentation of a needle stick injury the plaintiff had suffered in the line of duty in 1989.

7. The plaintiff, who was diagnosed HIV Positive in 1991, had never before requested a medical leave of absence, and had not revealed his medical condition to any employee of the City of Lowell prior to his attorney meeting with Chief Davis on February 21, 2000.

8. The plaintiff's attorney requested in the meeting with Chief Davis that the plaintiff's medical condition remain confidential, as the plaintiff had deep concerns about his ability to return to work in the future, if coworkers where aware of his medical condition. Chief Davis promised confidentiality in the matter to the plaintiff's attorney.

9. No other police officer in the Lowell Police Department has been on leave for being HIV positive.

10. Chief Davis had no previous knowledge of the plaintiff's medical condition prior to his meeting with the plaintiff's attorney on February 21, 2000.

11. By February 28, 2000 the plaintiff's co-workers had become aware of the Plaintiff's medical condition, and soon afterwards the plaintiff's condition became known to members of the public in the City of Lowell.

12. Other police officers have taken extended sick leave from the Lowell Police Department due to their medical conditions, and their medical conditions have been kept confidential, whereas the plaintiff's medical condition was not kept confidential, even after the plaintiff's express request that it be kept confidential.

13. The policy of the City of Lowell and the Lowell Police Department is to not disclose any confidential medical information to third parties.

14. According to Chief Davis, only he, the Law Department (including Judith Sweet) and the City Manager had a need to know of the plaintiff's specific medical condition.

15. Chief Davis had a conversation with Deputy Superintendent of Police Dennis Cormier (hereafter Deputy Cormier) in close proximity to his meeting with the plaintiff's attorney.

16. Deputy Cormier stated in his deposition taken on December 4, 2001 that he was informed of the plaintiff's medical condition by Chief Davis.

17. Lowell Police Lieutenant William Busby stated in his deposition taken on September 13, 2001 that he was informed of the plaintiff's medical condition by Deputy Cormier in a conference room at the Lowell Police Department.

18. Lowell Police Officer David Abbott stated in his deposition taken on August 29, 2001 that he was informed of the Plaintiff's medical condition in a hallway of the Lowell Police Department by Judith Sweet (who was an employee of the Lowell Law Department).

19. After learning of the plaintiff's medical condition, officers who had been quite comfortable previously working with the plaintiff now held a very derogatory opinion of the plaintiff based on his medical diagnosis.

20. On or about April 20, 2000 the plaintiff's attorney wrote a letter to Chief Davis complaining about the release of the plaintiff's medical condition.

21. Chief Davis and the Lowell Police Department failed to abide by their own code of conduct with regard to their treatment of the plaintiff's confidential medical information, in that, officers are not to divulge confidential information, the Chief of Police is to conduct an investigation when presented with a charge of a violation of regulations, and an officer who communicates confidential information to third parties has committed a punishable offense.

22. Not only did Chief Davis and the Lowell Police Department demonstrate discriminatory animus as hereinbefore set forth, but the Lowell Police Department continued thereafter to act with discriminatory animus with regard to the plaintiff. In May 2000 the plaintiff sought to withdraw funds from his personal 457K fund with Copeland Companies. Copeland Companies required medical leave confirmation and wage information to honor the plaintiff's request. Although this information is given by the Lowell Police Department routinely for every other case, the Police Department refused to provide it for the plaintiff.

23. On or about May 18, 2000 Copeland Companies representative ("Neil") notified the plaintiff via answering machine message that the Lowell Police Department would not cooperate in providing the letter needed by the plaintiff. "Neil" later then informed the plaintiff in a telephone conversation that a "high authority" in the Lowell Police Department had refused to cooperate in providing the needed documentation for the plaintiff stating that the plaintiff "was not injured enough".

24. Deputy Cormier testified in his deposition on December 4, 2001 that the finance Department of the Lowell Police Department was under his control in May 2000. Daniel Demarais, who was the Finance Officer for the City of Lowell in May 2000, has stated in a deposition that it would be an unusual practice for the Lowell Police Department to refuse such a routine request as that desired by the plaintiff.

25. The Plaintiff filed a complaint against the Lowell Police Department with the Massachusetts Commission against Discrimination (hereafter MCAD) on August 21, 2000 (MCAD Docket # 00132550). The plaintiff contended in his complaint that the Lowell Police Department had taken adverse employment actions against the plaintiff, based on his disability, when they disclosed the plaintiff's HIV medical status to co-

workers who did not have a need to know, and when they refused to provide the plaintiff with documentation that was routinely provided to other employees. The plaintiff contends that other employees who have taken medical leave with personal and sensitive medical conditions have not been subject to this same adverse treatment.

26. In February 2001 the plaintiff exhausted his accumulated sick leave time and no longer received a weekly income from the City of Lowell. Massachusetts General Law states that municipal employees on unpaid medical leave status are only required to pay 50% towards their monthly health insurance premium, with the employee's municipality paying the other 50%. The plaintiff's union contract further allowed for the plaintiff to pay only 25% towards his monthly health insurance premium.

27. The City of Lowell disregarded both benefits allowable to the plaintiff and instead placed the plaintiff on coverage under the Consolidated Omnibus Budget Reconciliation Act (hereafter COBRA) which required that the plaintiff pay 102% of his health insurance premium from approximately June 2001 to approximately December 2002.

28. In approximately December 2002 the plaintiff became aware of his rights in regards to his health insurance benefits and requested that his attorney speak with the Human Relations Office for City of Lowell. The plaintiff's attorney telephoned the Human Relations Office of the City of Lowell in December 2002 and informed the Human Relations Manager for the City of Lowell of the existence of Massachusetts General Law Chapter 32, Section 7A, subsection (b), as well as the existence of the plaintiff's union contract, which both allowed for the plaintiff to pay a much lower health insurance premium rate than what the City of Lowell was making the plaintiff responsible for paying.

29. After both the verbal notification from the plaintiff's attorney, and a written notification from the plaintiff to the City of Lowell, the plaintiff's employer only agreed to lower the plaintiff's responsibility for his monthly health insurance premium from 102% of the premium to 100% of the premium, and continued to list the plaintiff's status as "absent without pay", disregarding both Chief Davis's approval of a medial leave of absence status for the plaintiff, as well as the medical documentation that was provided to the city by the plaintiff. Either one of these facts alone should have entitled the plaintiff to an "unpaid medical leave status" which would have afforded the plaintiff the benefits as outlined in paragraph 26 above.

30. The plaintiff filed a second complaint on March 31, 2003 with the Massachusetts Commission against Discrimination for retaliation and discrimination in regards to the actions of his employer as it related to the plaintiff's health insurance coverage (Docket # 03BEM01030). The MCAD subsequently allowed the retaliation complaint to go forward and merged that complaint into MCAD Docket # 00132550.

31. In November 2004, Massachusetts Superior Court Justice Geraldine Hines found in favor of this Plaintiff, after trial, and ordered that the City of Lowell provide this plaintiff

benefits under Massachusetts General Law Chapter 41, Section 111F (hereafter M.G.L. chapter 41, section 111F), which this plaintiff was being denied by the City of Lowell.

32. The City of Lowell, in disregard to the order of Judge Hines continued to refuse to provide the plaintiff benefits under M.G.L. Chapter 41, Section 111F, which the court had found the plaintiff was entitled to.

33. The plaintiff in this instance has been treated differently than similarly situated employees, in that during discovery in a separate civil matter, it was learned that the City of Lowell had previously provided benefits to the Deputy Chief of Police (hereafter Deputy) after the Deputy alleged he had contracted the Hepatitis B virus on duty while responding to an incident on the job. Benefits were provided by the City of Lowell to the Deputy, at his request, even though the Deputy had failed to provide documentation of an exposure, had failed to properly follow departmental policy in the reporting of an exposure, and had failed to follow up with the City Physician as would be required after such an exposure.

34. In contrast, this plaintiff continues to be denied employment benefits from the City of Lowell under M.G.L. chapter 41, section 111F, even though this plaintiff's injury was witnessed, timely reported to a supervisor, properly documented as required by departmental policy, followed up with the City Physician as required by City of Lowell policy, and found by the superior court to be an injury which occurred in the line of duty.

35. The actions of the City of Lowell in refusing to provide employment benefits under M.G.L. chapter 41, section 111F to this plaintiff even after the courts order, and with no stay of such order, constitutes a continuing pattern of discrimination and retaliation against the plaintiff.

36. The actions of the plaintiff's employer caused the plaintiff monetary damages and emotional distress.

37. WHEREFORE, the plaintiff demands judgment against the defendant for damages and such other relief, including interest and cost, as this court deems just and appropriate.

38. The plaintiff requests a jury trial on all issues as to which he has a right to a trial by jury.

Plaintiff,
Rodney D. Desrosiers

*[signature]* (Pro se)

34 Shurtleff St. #2
Chelsea, MA. 02150
978-884-9832

01/25/05